967 F.2d 568
 In re HOLYWELL CORPORATION, et al., Debtors. (Two Cases)
HOLYWELL CORPORATION, Robert M. Musselman, Theodore B.
Gould, Plaintiffs-Appellants,
v.
Fred Stanton SMITH, Trustee of the Miami Center Liquidating
Trust, and The Bank of New York,
Defendants-Appellees. (Two Cases)
 Nos. 90-6019, 91-5472.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 5, 1992.
 
 Robert M. Musselman, Robert M. Musselman & Associates, Charlottesville, Va., for plaintiffs-appellants.
 Theodore B. Gould, pro se.
 Herbert Stettin, Herbert Stettin, P.A., Miami, Fla., for Fred Stanton Smith.
 Vance E. Salter, Michael J. Higer, Coll, Davidson, Carter, Smith, Slater & Barkett, P.A., Miami, Fla., for Bank of New York.
 Appeals from the United States District Court for the Southern District of Florida.
 Before BIRCH, Circuit Judge, JOHNSON* and BOWNES**, Senior Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellants Theodore Gould, Robert Musselman, and Holywell Corporation, challenge contempt orders entered against them during this consolidated bankruptcy matter. In addition, they challenge the validity of an attorneys' fee award.
 
 I. STATEMENT OF THE CASE
 
 2
 In the early 1980's, Gould and several entities with which he was involved borrowed money from the Bank of New York (the Bank) to finance the construction of buildings in the Miami Center development. The borrowers defaulted and the Bank commenced foreclosure. Soon thereafter, in August 1984, Gould and four other entities which Gould owns, controls, or dominates, filed for bankruptcy.[1] The five bankruptcy estates were ultimately consolidated into this single bankruptcy case.
 
 
 3
 In August 1985, the bankruptcy court confirmed the bankruptcy plan (the Plan) proposed by the Bank. The Plan called for the formation of the Miami Center Liquidating Trust (the Trust), the assets of which included all of the assets in the debtors' bankruptcy estates. Also in August 1985, the bankruptcy court appointed Fred Stanton Smith as the Trustee. Smith began implementing the Plan in October 1985.
 
 
 4
 Pursuant to the Plan, the Trust assets included all of the stock and assets of Twin Development Corporation ("Twin") because Holywell owned all of Twin's stock. However, in bankruptcy court in 1986, the debtors directly attacked the Trustee's right to the proceeds from the sale of land owned by Twin. The debtors lost this challenge.
 
 
 5
 Nonetheless, in August 1987, Twin itself filed suit in federal district court in Virginia against the Trustee and the Bank, collaterally challenging their rights to Twin's stock. On October 2, 1987, the bankruptcy court ordered Twin, Gould (as Twin's President and sole director), and Musselman (as Twin's attorney) to cause the dismissal of the Twin suit in Virginia. In Virginia, Twin responded with a subterfuge by filing both a motion to dismiss and a memorandum arguing against dismissal. On December 15, 1987, the bankruptcy court issued another order essentially reiterating the contents of the October 2 order. Nevertheless, on December 31, 1987, Gould wrote a letter to Musselman instructing him to withdraw the motion to dismiss the Twin suit and acknowledging that such action could lead to a finding of contempt. Later, in February 1988, four other wholly-owned Holywell subsidiaries filed lawsuits against the Trustee and the Bank in federal district court in Virginia.[2] The bankruptcy court and the district court both instructed the appellants to cause the non-Twin suits to be dismissed. However, as with the Twin suit, the appellants intentionally refused to comply.
 
 
 6
 Two contempt orders involving an award of attorneys' fees followed. In two separate orders, the district court found Gould, Holywell, and Musselman in contempt for failing to cause the dismissal of the Twin and non-Twin suits.[3] The district court sanctioned the appellants by ordering them to pay the costs and reasonable attorneys' fees arising from the Twin and non-Twin actions. The district court's April 30, 1990 order referred the case to a magistrate judge for the calculation of the costs and attorneys' fees to be awarded under each of the contempt orders. On September 22, 1990, the magistrate judge submitted his recommendation. The magistrate judge recommended an award of $67,412.50 in attorneys' fees and costs under the March 6 and April 30 orders to Trustee Smith, and an award of $71,214.90 under the March 6 order to the Bank. On October 25, 1990, the district court approved the magistrate judge's determination of attorneys' fees and costs.
 
 II. ANALYSIS
 
 7
 On appeal, appellants challenge both the district court's contempt orders and its award of attorneys' fees. We find no error in the district court's entry of the contempt orders. The district court acted properly by finding the appellants in contempt and ordering sanctions because of the appellants' failure to cause the Twin and non-Twin suits to be dismissed after being ordered to do so. See generally Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301-1306 (11th Cir.1991). Finding appellants' arguments regarding the contempt findings completely without merit, we affirm. 11th Cir.R. 36-1; United States v. Perchitti, 955 F.2d 674, 675 (11th Cir.1992); Judge v. American Motors Corp., 908 F.2d 1565, 1567 n. 1 (11th Cir.1990). However, the appellants' arguments regarding the attorneys' fees award require closer attention.
 
 
 8
 The appellants make three arguments regarding the attorneys' fees awards. First, they argue that the district court failed to review properly the attorneys' fees claim. Second, they assert that the magistrate judge erred by not taking additional testimony and/or evidence in an evidentiary hearing following their objections to the magistrate judge's report and recommendation. Finally, they argue that the magistrate judge erred by not making explicit findings on each of the factors listed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974). We review the district court's award of attorneys' fees for an abuse of discretion. In re Red Carpet Corp. of Panama City Beach, 902 F.2d 883, 890 (11th Cir.1990).
 
 
 9
 Regarding the first argument, it is certainly true that a district court must review de novo any magistrate judge's findings to which a party has timely objected. See 28 U.S.C.A. § 636(b)(1)(B) (West Supp.1992). Such review, however, entails only an independent review of the record, which is what the district court stated that it performed in its October 25, 1990 order. See Nettles v. Wainwright, 677 F.2d 404, 409 & 409 n. 5 (5th Cir.Unit B 1982) (en banc). Consequently, this argument provides no basis for relief.
 
 
 10
 Turning to the appellants' second contention, it cannot be gainsaid that if any material facts regarding the amount of services rendered are disputed, then the magistrate judge must hold an evidentiary hearing in order to receive additional evidence related to the disputed matter. In re Red Carpet Corp., 902 F.2d at 892 (11th Cir.1990). However, there is no need to hold an evidentiary hearing "every time the written pleadings present a dispute of opinions on matters as to which the courts possess expertise. Such matters might include the reasonableness of the fee, the reasonableness of the hours and the significance of the outcome." Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1304 (11th Cir.1988) (emphasis added). Only when there "is a dispute of material historical fact" must a district court hold an evidentiary hearing. Id.
 
 
 11
 The transcript of the magistrate judge's hearing on the attorneys' fees and costs shows that Musselman and Gould both raised questions regarding the hourly rate charged and the amount of time expended by appellees' counsel. Following Musselman's objection, the magistrate judge offered to take testimony on this matter if Musselman would proffer what testimony he intended to provide. However, Musselman made no such proffer. Following Gould's objections, the magistrate judge indicated that he would take testimony on the appellees' attorneys' hourly rates.[4] At the conclusion of the initial hearing on the attorneys' fee award, the magistrate judge stated that he would accept written filings on the matters raised during the hearing. He also explained that he would not conduct additional hearings unless the written submissions proved inadequate or insufficient.
 
 
 12
 After a careful review of the record, we conclude that additional hearings were not necessary in this case. Under Norman, resolution of issues regarding hourly rates and total hours billed are generally within the trial court's discretion. Id. Moreover, neither Gould nor Musselman have demonstrated that the facts of this case present an appropriate exception to the general rule. We find that the district court did not abuse its discretion by failing to hold an additional evidentiary hearing. See id.
 
 
 13
 Having disposed of the appellants' first two challenges to the attorneys' fees award, we turn to the appellants' third and final argument, that the district court and magistrate judge both failed to take adequate account of Johnson v. Georgia Highway Express, 488 F.2d 714, 717-20 (5th Cir.1974).
 
 
 14
 This Court has held that "[a] conclusory statement that a fee is reasonable in light of the success obtained is generally insufficient" to support an award of attorneys' fees. Norman, 836 F.2d at 1304. Rather, when granting an award of attorneys' fees in a bankruptcy case, the district courts must "briefly explain the findings on which the award is based, including a description of how each of the twelve Johnson factors affected the decision." In re Red Carpet Corp., 902 F.2d at 892.[5] See First Colonial Corp. of America, 544 F.2d at 1298-99.
 
 
 15
 In the case at bar, the district court summarily adopted the magistrate judge's report and recommendation regarding the award of attorneys' fees. Turning to the magistrate judge's report, we find that the magistrate judge adequately considered the various Johnson factors. See generally First Colonial Corp., 544 F.2d at 1298. The appellants are entitled to no relief on this ground. Because none of the appellants' arguments against the award of attorneys' fees have merit, we affirm the district court's award of attorneys' fees.
 
 III. CONCLUSION
 
 16
 The decision of the district court is AFFIRMED in all respects.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Hugh H. Bownes, Senior U.S. Circuit Judge for the First Circuit, sitting by designation
 
 
 [1]
 Miami Center Ltd. Partnership v. Bank of New York, 838 F.2d 1547, 1548 (11th Cir.), cert. denied, 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988); Holywell Corp. v. Bank of New York, 901 F.2d 931 (11th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991)
 
 
 [2]
 These will be referred to as the "non-Twin suits." These actions were all similar to the one filed by Twin
 
 
 [3]
 The bankruptcy court entered an order of certification of contempt on April 8, 1988, recommending that the district court enter sanctions against Gould, Musselman, and Holywell Corporation relating to the Twin suit. The district court accepted the bankruptcy court's April 8, 1988 recommendation and entered a finding of contempt on March 6, 1990. On April 30, 1990, the district court entered a second contempt finding relating to the non-Twin suits
 
 
 [4]
 In point of fact, the magistrate did not take any additional testimony
 
 
 [5]
 The twelve Johnson factors include:
 (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases.
 In the Matter of First Colonial Corp. of America, 544 F.2d 1291, 1299 (5th Cir.), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); Johnson, 488 F.2d at 717-19.